UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DR. OLACHI MEZU-NDUBUISI,

       Plaintiff,

vs.

UNIVERSITY OF ROCHESTER, *et al.*,

       Defendants.

DECISION AND ORDER

25-CV-6462-MAV

---

## INTRODUCTION

Plaintiff Dr. Olachi Mezu-Ndubuisi, a tenured professor at the University of Rochester ("the University") who is black and of Nigerian origin, filed this action in September 2025 in response to Defendants' letter notifying her that she would be referred to the University Committee on Tenure and Promotion ("UCTP") for possible tenure revocation and abrogation of her contract. ECF No. 6. Plaintiff's First Amended Complaint ("FAC") alleged one count of retaliation under 42 U.S.C. § 1981 and more than two dozen counts of defamation under New York state law. *Id.* Plaintiff also moved to enjoin the Defendants from referring her to the UCTP. ECF No. 10. Defendants moved to dismiss the FAC for failure to state a claim. ECF No. 28.

In early October 2025, Plaintiff filed a petition for a writ of mandamus, asking this Court to direct Defendants to reverse Plaintiff's termination from the medical staff of Strong Memorial Hospital, and prohibit them from reporting the adverse personnel action to the National Practitioner Data Bank ("NPDB") and the Office of Professional Medical Conduct of the New York State Department of Health. ECF No.

34. In addition, after responding in opposition to Defendants' motion to dismiss, yet while the motion was still pending, Plaintiff filed a motion to amend her complaint to add two additional retaliation claims under 42 U.S.C. § 1981. ECF No. 41. Soon thereafter, she filed a motion for sanctions based on Defendants' report of the adverse action to the NPDB. ECF No. 44.

The Court heard oral argument on the pending motions in February 2026. ECF No. 52. Since that time, Plaintiff has filed a motion for leave to file two supplemental exhibits in support of her motion to amend her complaint (ECF No. 55), and four motions for leave to file further evidence of retaliation (ECF Nos. 62, 63, 68, 69).

For the reasons discussed below, Plaintiff's respective motions for a preliminary injunction, mandamus, sanctions, and leave to file further evidence are denied; Plaintiff's motion to amend is granted in part and denied in part; and Defendants' motion to dismiss is denied as moot.

## BACKGROUND

The Court draws the following facts from the proposed Second Amended Complaint (the "SAC"), ECF No. 41-3, accepts them as true, and draws all reasonable inferences in Plaintiff's favor to evaluate whether amendment would be futile. *See, e.g., Shoaibi v. Mayorkas*, No. 20-CV-7121-FPG, 2021 WL 4912951, at *1 (W.D.N.Y. Oct. 21, 2021) (quoting *Case v. Anderson*, No. 16 CIV. 983 (NSR), 2017 WL 3701863, at *6 (S.D.N.Y. Aug. 25, 2017) ("The central inquiry for the Court when considering a motion to dismiss in tandem with a motion to amend is . . . whether the proposed amended complaint can survive the motion to dismiss.")). Further, the Court observes

the general rule that documents outside the pleadings cannot be considered, but "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citations omitted).

Here, Plaintiff has attached five exhibits to the SAC, which the Court will consider for the purposes of the present motion: (1) a letter from the University to Plaintiff dated August 29, 2025 ("August 29 letter"); (2) a letter from the University to Plaintiff's counsel dated September 5, 2025 ("September 5 letter"); (3) a letter from the University to Plaintiff dated October 6, 2025 ("October 6 letter"); (4) a letter from the University to Plaintiff dated October 27, 2025 ("October 27 letter"); and (5) Plaintiff's declaration, under penalty of perjury, in support of her motion to amend ("Decl."). *See* ECF No. 41-3.

Plaintiff was hired by the University on July 1, 2022 as a neonatologist in the Division of Neonatology, to serve "as a clinician-scientist to conduct laboratory, clinical, global health and translational research, including bench to bedside applications of research knowledge." SAC ¶ 23. Part of Plaintiff's duties included clinical service in the Neonatal Intensive Care Unit ("NICU") in University-run hospitals. *See, e.g.,* Decl. ¶ 19 (referencing Plaintiff's shift in the NICU). Plaintiff's issues with Defendants appear to have begun with two patient care concerns that were raised with her in September and October 2023, respectively. *Id.* ¶ 18. In November 2023, Plaintiff was required to complete "communications coaching." *Id.* ¶ 21. Following the communications coaching, Plaintiff complained to University

officials on December 8, 2023 of racism and retaliation, and filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on December 19, 2023. *Id.* ¶¶ 22–23.

On December 27, 2023, Plaintiff was removed from clinical work at the hospital. *Id.* ¶ 25. In January 2024, she filed for reappointment to the hospital staff with renewal of her clinical privileges. *Id.* ¶ 26. On June 4, 2024, the University presented Plaintiff with a "re-entry plan" to clinical work, which Plaintiff considered to be biased and unfair. *Id.* ¶ 30. On June 14, 2024, the University communicated "an ultimatum" to Plaintiff that she accept the re-entry plan as presented by June 21, 2024, or her clinical privileges would not be renewed. *Id.* ¶ 31. Were the University to decide not to renew Plaintiff's clinical privileges, it would be required by law to file a report with the NPDB, which is "a death knell to the career of any physician." *Id.*

Accordingly, on June 20, 2024 Plaintiff filed suit in the United States District Court for the Western District of New York "alleg[ing] retaliation for her EEOC filing," and seeking injunctive and other relief. SAC ¶ 28 (citing *Olachi Mezu-Ndubuisi v. UR, et al.*, W.D.N.Y. Case No. 24-cv-6387 ("*Mezu I*"). *Mezu I* was assigned to Hon. Elizabeth A. Wolford, who heard oral argument on Plaintiff's motion for a preliminary injunction on August 14, 2024. SAC ¶ 28. Ultimately, Chief Judge Wolford issued an order denying Plaintiff's requests for a temporary restraining order and preliminary injunction in January 2025, and Plaintiff appealed to the Second Circuit on January 15, 2025.[1]

---

[1] It is well-settled in this Circuit that "'[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact

However, while the motions were still pending before Chief Judge Wolford, the University renewed Plaintiff's clinical privileges on June 27, 2024, but on July 3, 2024 limited the length of that renewal to two months. Decl. ¶ 33. On August 5, 2024, Plaintiff's application for clinical privileges was re-opened, a meeting of the Credentialing Committee was convened, and the University apparently changed course and denied Plaintiff's clinical privileges. *Id.* ¶ 34. Plaintiff then initiated "Fair Hearing procedures," which will be discussed further below. *Id.* ¶ 35.

On August 28, 2025, the Second Circuit set oral argument for Plaintiff's January 2025 appeal of Chief Judge Wolford's denial of her motions for injunctive relief. SAC ¶ 29. On August 29, 2025, Defendants emailed and mailed Plaintiff a letter with the subject line "Referral to the University Committee on Tenure and Promotion for Tenure Revocation and Abrogation of Contract." SAC, Exh. 1. That letter did not reference the newly-scheduled oral argument in *Mezu I* before the Second Circuit, but it did allege multiple "serious concerns" Defendants had in regards to Plaintiff's conduct, including allegations that Plaintiff misrepresented to the University her privileges history at a prior employer when applying for credentialing, failed to comply with University Institutional Review Board policies and practices with respect to human subject research, and was severely deficient in the oversight and management of her lab. *Id.* Based on these concerns, the letter informed Plaintiff that she was being referred to the UCTP for possible revocation of

---

of such litigation and related filings.'" *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

her tenure and abrogation of her employment contract. *Id.* On September 5, 2025, University Counsel John Nutter notified Plaintiff's counsel by letter that Plaintiff would be referred to the UCTP by September 15, 2025. SAC, Ex. 2.

On September 8, 2025, Plaintiff filed the complaint initiating this action, and followed-up with her first amended complaint that same day. ECF Nos. 1, 6. On September 9, 2025, Plaintiff filed the motion for preliminary injunction pending before the Court. ECF No. 10.

Meanwhile, Plaintiff's "Fair Hearing" proceedings were also coming to a head, culminating in Strong Memorial Hospital's decision on September 29, 2025 to end Plaintiff's membership on the hospital medical staff. As recounted in a letter to Plaintiff sent by Kathleen Parrinello, President and Chief Executive Officer of the hospital, on October 6, 2025:

> [Y]ou requested a fair hearing by letter from your attorney to me dated September 24, 2024. You were notified that a fair hearing was scheduled for August 18, 2025 by a letter to your attorney from the presiding officer, the Honorable Evelyn Frazee (retired), dated July 15, 2025.
>
> Because you did not personally appear at the August 18, 2025 fair hearing, you are deemed to have waived your right to a fair hearing and appellate review, pursuant to Section 2.F.3 of the Fair Hearing Plan appended to the Strong Memorial Hospital Medical Staff Bylaws.
>
> As such, the decision of the Board of Governors [on September 29, 2025] to deny your application for reappointment to the Strong Memorial Hospital Medical Staff is final. You do not have any further rights to a hearing or appeal under the Medical Staff Bylaws.
>
> Please be advised that, as required under the Health Care Quality Improvement Act of 1986, Strong Memorial Hospital will report this action to the National Practitioner Data Bank. Further, as required under New York State Department of Health regulations, we will report this action to the Office of Professional Medical Conduct of the New York

State Department of Health.

SAC, Exh. 3.

As a result of her removal from the hospital staff, Plaintiff's compensation was reduced. As explained in an October 27, 2025 letter to Plaintiff from Jill S. Halterman, Chair of Pediatrics at the University:

> On December 28, 2023, you were removed from the clinical service schedule for the [NICU] due to concerns that had been raised regarding your clinical care in the NICU. As you remained unwilling to agree to a plan for your return to service in the NICU in a manner consistent with NICU standards that would address those concerns, there were no clinical earnings to support your salary. Accordingly, the University reduced your salary by $53,700 effective July 1, 2025.
>
> In accordance with the University Master Faculty Compensation Plan, this letter is to notify you that your target salary will be further reduced by $50,000 to $164,883, effective January 1, 2026 for the compensation payable to you on or about January 30, 2026. The University reserves the right to consider further reductions in salary in the future consistent with the Compensation Plan.
>
> We expect that you will continue with your research activities and perform other non-clinical duties and responsibilities for the University consistent with your appointment and the needs and mission of the Department and the University.

SAC, Exh. 4. *See also* SAC ¶ 42.

The following day, October 28, 2025, Plaintiff filed the motion to amend her complaint and the proposed Second Amended Complaint that is presently before the Court. ECF No. 41. In addition to alleging retaliation for Defendants' referral of Plaintiff to the UCTP for consideration of tenure revocation and abrogation of contract, the SAC alleges a second instance of retaliation for Plaintiff's removal from the University's medical staff on September 29, 2025 and planned report to the NPDB

and Department of Health, and a third instance of retaliation for reducing her salary. SAC ¶¶ 46–54.

## MOTION FOR A PRELIMINARY INJUNCTION

In September 2025, Plaintiff filed a motion for a preliminary injunction to prohibit her referral to the UCTP for potential revocation of tenure and abrogation of her employment contract. ECF No. 10. She argued in pertinent part that revoking her tenure and abrogating her contract would cause irreparable harm because it "would end her medical career, including pioneering research that could prevent or alleviate widespread suffering." ECF No. 10-1 at 2.

In opposition, Defendants argued that Plaintiff's motion was not yet ripe for review because they had not yet even referred Plaintiff to the UTCP, but had only notified her that she would be referred. ECF No. 29. Additionally, in response to Plaintiff's irreparable harm argument, Defendants noted Judge Wolford's denial of Plaintiff's preliminary injunction motion in a related case, and maintained that Plaintiff could not establish irreparable harm because all her alleged injuries could be remedied by an award of monetary damages or are otherwise reparable. *Id.* at 18 (citing, *inter alia, Mezu-Ndubuisi* v. *Univ. of Rochester*, No. 24-CV-06387-EAW, 2025 WL 798603, at *10 (W.D.N.Y. March 13, 2025) ("the law is clear that losing a job, without much more, is not an irreparable injury")).

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Krick v. Town of Lyons, New York*, No. 24-CV-06178 EAW, 2024 WL

2240088, at *5 (W.D.N.Y. May 17, 2024) (quoting *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 511 (2d Cir. 2005)). A district court may grant a preliminary injunction when the movant demonstrates:

> (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest.

*North American Soccer League, LLC v. United States Soccer Fed'n*, 883 F.3d 32, 37 (2d Cir. 2018). The Court "has wide discretion in determining whether to grant a preliminary injunction[.]" *Moore*, 409 F.3d at 511.

Irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction" and "must therefore be satisfied before the other requirements for an injunction can be considered." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 80 (2d Cir. 2024) (internal quotation marks omitted). "To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. And, irreparable harm must be shown to be actual and imminent, not remote or speculative." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (internal citations and quotations omitted).

The Court notes that while Plaintiff's present motion for a preliminary injunction was pending, the Second Circuit affirmed Judge Wolford's denial of Plaintiff's motion for a preliminary injunction in *Mezu I* on the basis that Plaintiff had "failed to make an adequate showing of irreparable harm." *See Mezu-Ndubuisi v.*

9

*Univ. of Rochester*, No. 25-139, 2026 WL 456740, at *2 (2d Cir. Feb. 18, 2026). The

Circuit Court explained that:

> Mezu-Ndubuisi suggests that "damages would be complex or difficult to measure" given "her complex roles as a clinician-scientist with clinical, laboratory, and global health responsibilities," and that the district court was therefore required to hold an evidentiary hearing to assess her other forms of irreparable harm. Mezu-Ndubuisi Br. at 19. But despite having had ample opportunity to do so, Mezu-Ndubuisi has identified no evidence indicating that those factors would render a damages calculation so uncertain or difficult as to make her injuries irreparable. And an evidentiary hearing is not required where, as here, "the relevant facts either are not in dispute or have been clearly demonstrated at prior stages of the case" or where "the disputed facts are amenable to complete resolution on a paper record." *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998).
>
> We also reject Mezu-Ndubuisi's contention that the circumstances of this case "establish[ ] irreparable harm *per se*." Mezu-Ndubuisi Br. at 21. Unlike in *Holt v. Continental Group, Inc.*, which Mezu-Ndubuisi relies on, the circumstances of Mezu-Ndubuisi's removal from the NICU do not, at this early stage of the litigation, reflect a "distinct risk that other employees may be deterred from protecting their rights . . . or from providing testimony for the plaintiff in her effort to protect her own rights." 708 F.2d 87, 91 (2d Cir. 1983). In fact, *Holt* explicitly rejected "a presumption of irreparable injury in every action by a plaintiff alleging [retaliation]." *Id.* A plaintiff must instead show why the "consequences" of the adverse employment action would, "in the circumstances of [their] case," cause "irreparable damage." *Id.* At this relatively early stage of the litigation, Mezu-Ndubuisi has failed to make that showing.
>
> Ultimately, there is no indication that traditional employment remedies (like reinstatement or monetary damages) following a resolution of this case on the merits would fail to redress Mezu-Ndubuisi's asserted injuries. We therefore perceive no abuse of discretion in the district court's denial of her preliminary-injunction motion.

*Id.* at *3.

Although the matter before Judge Wolford sought to enjoin Strong Memorial

Hospital from terminating Plaintiff's clinical privileges, rather than – as here –

10

Plaintiff's referral to the UCTP, the Court finds that the logic of Judge Wolford's and the Second Circuit's findings with respect to irreparable harm also applies to the circumstances presently before this Court. Here, as in *Mezu I*, Plaintiff's claim that revoking her tenure and abrogating her contract cause irreparable harm because it would end her medical career and pioneering research is "too speculative to justify preliminary relief." *Id.* at *3. Further, Plaintiff has not established "that traditional employment remedies (like reinstatement or money damages) following a resolution of this case on the merits would fail to redress" Plaintiff's asserted injuries. *Id.* at *3.

"Where a plaintiff does not establish irreparable harm, the court need 'not address the other factors necessary for the issuance' of injunctive relief." *Mrs. United States Nat'l Pageant, Inc. v. Williams*, 353 F. Supp. 3d 213, 217–18 (W.D.N.Y. 2019) (citing *Rush v. Hillside Buffalo, LLC*, 314 F.Supp.3d 477, 486 (W.D.N.Y. 2018)). Because the Court finds that Plaintiff has failed to demonstrate the threat of irreparable harm in the absence of injunctive relief, her motion for a preliminary injunction is denied.

## PETITION FOR MANDAMUS

On October 8, 2025, in response to receipt of a letter indicating that Defendants had denied her reappointment to Strong Memorial Hospital, and indicating they would report the action to the NPDB, Plaintiff filed a petition for a writ of mandamus ordering Defendants to reinstate her employment and withdraw its report to the NPDB, arguing that the Court has the inherent power to preserve the status quo, and statutory authority under the All Writs Act. ECF No. 34 (quoting, *inter alia, United*

11

*States v. United Mine Workers of America*, 330 U.S. 258, 290 (1947) (federal courts possess inherent equitable power "to issue orders necessary to preserve their ability to render a meaningful decision."); 28 U.S.C. § 1651 (federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions.")).

In response, Defendants argue that this Court does not have jurisdiction to issue a writ of mandamus in this case, and that the only statute authorizing a district court to issue such a writ is 28 U.S.C. § 1361, which limits the scope of the court's authority to actions "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." ECF No. 40 at 5 (citing *Strauss v. Kentucky Bd. Of Med. Licensure*, No. 19-CV-6537L, 2020 WL 1493963, at *3 (W.D.N.Y. Mar. 26, 2020)). They further argue that even if the Court did have jurisdiction, there is no merit to Plaintiff's claim.

A writ of mandamus is "one of the most potent weapons in the judicial arsenal." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (internal citations and quotation marks omitted). It is well-settled that, "[a]s a general rule[2], district courts do not issue directions in the nature of mandamus except in aid of jurisdiction already acquired." *United States v. Associated Merch. Corp.*, 256 F. Supp. 318, 321 (S.D.N.Y. 1966) (citing *Rosen v. Alleghany Corp.*, 133 F. Supp. 858, 865 (S.D.N.Y. 1955)). Where a court does have jurisdiction to enter a writ of mandamus, three conditions must be satisfied before it may issue: [1] "the party seeking issuance of the writ [must] have

---

[2] "This rule derives, not from the nature of the writ itself, but from decisions which hold that Congress had, in Section 24 of the Judicial Code, 'withheld power to entertain mandamus proceedings.'" *Associated Merch. Corp.*, 256 F. Supp. at 321.

no other adequate means to attain the relief he desires, . . . . [2] the petitioner must satisfy the burden of showing that [his] right to issuance of the writ is clear and . . . [3] even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 380–81 (internal citations and quotation marks omitted; collecting cases).

The Court agrees with Defendants that it does not have jurisdiction to enter a writ of mandamus in this matter. The All Writs Act, 28 U.S.C. § 1651, "does not purport to confer original jurisdiction [to issue writs of mandamus] but rather to prescribe the scope of relief which may be granted when jurisdiction otherwise exists." *Application of James*, 241 F. Supp. 858, 860 (S.D.N.Y. 1965) (citing *United States ex rel. Vassel v. Durning*, 152 F.2d 455 (2d Cir. 1945)). The only statute conferring original jurisdiction on the district court to issue a writ of mandamus is 28 U.S.C. § 1361, which provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *See also, e.g., Richmond v. P.B. #7, LLC*, No. 16 CIV. 1121 (BMC), 2016 WL 3440597, at *1 (E.D.N.Y. June 20, 2016) ("the writ is not appropriate against private parties over which this court does not otherwise have jurisdiction"). Because Defendants are not officers or employees of the United States or any of its agencies, § 1361 is not applicable in the instant case, and therefore does not confer original jurisdiction on the Court to issue mandamus here. Plaintiff has not identified any other specific

13

authority upon which original jurisdiction could be based.

Moreover, even if the Court did have jurisdiction, Plaintiff has not demonstrated that she is entitled to a writ of mandamus because she has other adequate means of obtaining the relief. As quoted above, in reviewing Judge Wolford's denial of Plaintiff's motion for a preliminary injunction in *Mezu I*, the Second Circuit stated that "[u]ltimately, there is no indication that traditional employment remedies (like reinstatement or monetary damages) following a resolution of this case on the merits would fail to redress Mezu-Ndubuisi's asserted injuries." *Mezu-Ndubuisi*, 2026 WL 456740 at *3. The Court finds the same is true here.

Lastly, the Court acknowledges prior courts' warnings with respect to mandamus actions to beware of "unimportant" labels for requested relief. The labels, these courts have warned, may blur the distinction between requests for mandamus "in its original sense – a suit against a public officer to compel performance of some 'ministerial' duty" – and a request for mandatory injunctive relief, which may be undertaken against private parties. *Stern v. S. Chester Tube Co.*, 390 U.S. 606, 608 (1968); *see also Herrmann v. Brooklyn L. Sch.*, 432 F. Supp. 236, 238 (E.D.N.Y. 1976) ("His prayer for mandamus is not fatal. The label of the relief is unimportant."). In the instant case, however, even if Plaintiff has simply labeled her motion incorrectly, she still has not demonstrated entitlement to relief. As discussed above, she has not satisfied the criteria for issuance of a preliminary injunction. Accordingly, Plaintiff's petition for a writ of mandamus must be denied.

14

## MOTION FOR SANCTIONS

Plaintiff has also filed a "motion for contempt" against Defendants, which observes that Plaintiff filed a motion for a preliminary injunction on September 9, 2025, and a motion for leave to file an amended complaint on October 28, 2025, and yet that while these motions were pending Defendants declined Plaintiff's application for reappointment to clinical privileges and filed an adverse action report with the NPDB. ECF No. 44 at 2. Plaintiff asks the court to find Defendants in contempt and direct them to rescind all adverse actions taken against Plaintiff after the filing of her motion for a preliminary injunction. *Id.* at 3. In support of her position, Plaintiff argues that federal courts "hold that a defendant may not moot or frustrate pending injunctive proceedings by unilateral action." *Id.* (citing *Lamuth v. Hartford Life and Acc. Ins. Co.*, 30 F. Supp. 3d 1036, 1044 (W.D. Wash.[3] 2014)). In response, Defendants maintain that Plaintiff has failed to demonstrate that a finding of contempt is warranted.

The legal principles underlying contempt actions are well-settled. As summarized by the Second Circuit:

> The contempt power serves to "protect[ ] the due and orderly administration of justice and [to] maintain[ ] the authority and dignity of the court." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). A court may hold a party in contempt if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner. *Paramedics Electromedicina Comercial, Ltd. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004).

---

[3] As Defendants accurately point out, Plaintiff's cite to this case listed the deciding court as "W.D.N.Y." when in fact the case was decided by Hon. John C. Coughenour in the Western District of Washington. *See* ECF No. 46 at 5.

15

*CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016).

Here, the Court agrees with Defendants that Plaintiff's motion for sanctions is without merit because she has not shown that Defendants failed to comply with a clear and unambiguous order of the Court. In addition, the Court agrees that the case Plaintiff cited in support of her argument, *Lamuth*, does not stand for the proposition that "a defendant may not moot or frustrate pending injunctive proceedings by unilateral action," and certainly not for the proposition that a defendant may be held in contempt for doing so. *See Lamuth*, 30 F. Supp. 3d at 1043–46 (finding that the plaintiff's request for declaratory relief against the insurance company was not moot in light of its payment of benefits after plaintiff commenced litigation).

## MOTIONS FOR LEAVE TO FILE ADDITIONAL EVIDENCE

Since oral argument was held in February 2026, Plaintiff has filed five motions for leave to file supplemental exhibits or additional evidence, presumably to her proposed SAC. ECF Nos. 55, 62, 63, 68, 69. Defendants oppose Plaintiff's motions. ECF Nos. 59, 65, 70. They argue that the evidence is not attached to, incorporated by reference into, or integral to the SAC; that even if the Court were to consider the evidence, it does not save the SAC from futility; and that there is no valid procedural or substantive basis for the Court to consider the additional evidence. For the reasons stated below, each of Plaintiff's five motions for leave to file additional evidence are denied without prejudice.

As Defendants recognize, "[t]he general principle is that supplemental filings require the leave of court." ECF No. 65 at 6 (quoting *Bradshaw v. Piccolo*, 772 F.

Supp. 3d 331, 341 (W.D.N.Y. 2025)). In that regard, where the particular motion that a party seeks to supplement is a motion for leave to amend, Rule 15(d) of the Federal Rules of Civil Procedure provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting forth transactions or occurrences or events that happened after the date of the pleading to be supplemented." "The allowance of supplemental pleadings is a matter within the discretion of the trial court . . . to be determined on the basis of all the relevant facts and circumstances." *Friedman v. Typhoon Air Conditioning Co.*, 31 F.R.D. 287, 289 (E.D.N.Y. 1962). Absent "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, the motion should be freely granted." *Sherwin-Williams Co. v. Spitzer*, No. 104CV185DNHRFT, 2006 WL 8452015, at *4 (N.D.N.Y. May 31, 2006) (citing *Interpublic Group of Companies, Inc. v. Fratarcangelo*, 2002 WL 31720355, at *1 (S.D.N.Y. Dec. 4, 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182) (1962)).

Here, the Court denies without prejudice Plaintiff's motions to supplement. Most obviously, though Plaintiff maintains that the evidence submitted in three of the four motions involves "further evidence of retaliation," Plaintiff does not specify how each of the proposed items relates to her specific claims. In fact, Plaintiff does not present the supplemental material in the form of a pleading at all.

Under Rule 10(b) of the Federal Rules of Civil Procedure:

[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances . . . . If doing so would promote clarity, each claim founded on a separate . . . occurrence . . . must be stated in a separate count . . . .

17

Fed. R. Civ. P. 10(b). Plaintiff has not conformed with the rules in that regard, and as a result it is not clear whether the additional evidence is intended to supplement existing claims or to assert new claims. Because the relevance of Plaintiff's proposed additional evidence is ambiguous, and because she has failed to conform with Fed. R. Civ. P. 10(b), her motions for leave to file additional evidence are denied without prejudice.

## DEFENDANTS' MOTION TO DISMISS; PLAINTIFF'S MOTION TO AMEND

Plaintiff's first amended complaint alleged a single count of retaliation under 42 U.S.C. § 1981 based on Defendants' referral of Plaintiff to the UCTP for consideration of tenure revocation and abrogation of contract, and 21 counts of defamation for statements in the August 29 Letter. ECF No. 6. Defendants have filed a motion to dismiss for failure to state claim (ECF No. 28), and Plaintiff has responded with a motion for leave to amend (ECF No. 41). Plaintiff's proposed second amended complaint ("SAC") seeks to add a second instance of retaliation for Plaintiff's removal from the University's medical staff on September 29, 2025 and planned report to the NPDB and state Department of Health, and a third instance of retaliation for reducing her salary. SAC ¶¶ 46–54.

## I. Legal Standard

"District courts in this Circuit have repeatedly explained that, when faced with an amended complaint, they may either deny a pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020)

(citing *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 291 (E.D.N.Y. 2016)). "Where the proposed amendment requires leave of court, 'the preferred course is to grant leave to amend even if doing so renders moot the motion to dismiss, rather than granting the motion to dismiss and rendering moot the motion for leave." *Wilson v. Fabric Cellar, Inc.*, No. 20-CV-244S, 2021 WL 2942354, at *2 (W.D.N.Y. July 13, 2021) (quoting *Rheaume v. Pallito*, No. 2:15-cv-135-wks-jmc, 2015 WL 7300790, at *2 (D. Vt. Oct. 22, 2015) (emphasis omitted)). "However, it is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

Here, the Court elects to deny Defendants' motion to dismiss as moot and address Plaintiff's motion to amend the complaint by considering Defendants' arguments in support of their motion to dismiss. *Shoaibi*, 2021 WL 4912951 at *3.

Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend its pleadings by leave of court. Fed. R. Civ. P. 15(a). The decision to grant leave to amend is within the sound discretion of the trial court. *See Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 573 (S.D.N.Y. 1999) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). Nevertheless, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182; *accord McCarthy v. Dun &*

19

*Bradstreet Corp.*, 482 F.3d 184, 200–02 (2d Cir. 2007).

## II. Delay, Bad Faith, Prejudice

"In the Second Circuit, '[m]ere delay, [ ] absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.'" *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) (quoting *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). Further, only undue prejudice – such as requiring the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delaying the resolution of the dispute – warrants denying leave to amend. *Agerbrink*, 155 F. Supp. 3d at 454. The party opposing the proposed amended pleading has the burden of establishing that amendment would be prejudicial. *Jipeng Du v. Wan Sang Chow*, No. 18-CV-01692 (ADS) (AKT), 2019 WL 3767536, at *4 (E.D.N.Y. Aug. 9, 2019) (internal quotations and citations omitted).

Here, Plaintiff filed her motion for leave to amend less than two months after filing her original complaint. Further, there is nothing before the Court that suggests bad faith filing.[4] Lastly, despite significant pre-answer motion practice, the matter has not proceeded to discovery in either this case, or the case before Judge Wolford. Consequently, the Court finds that Plaintiff's motion to amend was not due to undue delay or bad faith on Plaintiff's part, and would not unduly prejudice Defendants.

---

[4] Black's Law Dictionary defines "bad faith" as "[d]ishonesty of belief, purpose, or motive." BAD FAITH, Black's Law Dictionary (12th ed. 2024). "While not much case law exists in this Circuit about what constitutes bad faith for the purpose of denying a motion for leave to amend a pleading, '[a] finding that a party is seeking leave to amend solely to gain a tactical advantage . . . supports a finding that such an amendment is made in bad faith.'" *Franco v. Diaz*, 51 F. Supp. 3d 235, 245 (E.D.N.Y. 2014) (quoting *Youngbloods v. BMG Music*, No. 07 Civ. 2394, 2011 WL 43510, at *9 (S.D.N.Y. Jan. 6, 2011)).

## II. Futility

It is well-settled that "[a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). The party opposing the proposed amended pleading has the burden of establishing that amendment would be futile. *Jipeng Du*, 2019 WL 3767536 at *4.

An action must be dismissed under Rule 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). To survive a motion to dismiss under Rule 12(b)(6), on the other hand, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Where a plaintiff's factual allegations are "merely consistent with" a defendant's liability, those allegations "'stop[] short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Moreover, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (citation and internal quotation marks omitted).

21

## A. Retaliation under 42 U.S.C. § 1981

Plaintiff maintains that her continued attempts to vindicate her federal racial discrimination claims has led Defendants to retaliate, including through alleged defamatory statements contained in the August 29, 2025 letter and referring her to the UCTP for possible termination of her tenure and abrogation of her contract, removing her from the hospital medical staff and reporting her to the NPDB, and reducing her salary. *See, e.g.*, ECF No. 36 at 6.

In response, Defendants argue that Plaintiff fails to demonstrate a causal connection between her attempts to vindicate her discrimination claims and Defendants' alleged retaliatory actions. For instance, in their opposition brief to Plaintiff's motion to amend, Defendants maintain that "like [P]laintiff's prior retaliation claims, here again she fails to articulate any plausible connection between the allegedly retaliatory actions and any protected activity." ECF No. 42 at 1; *see also* ECF No. 28-1 at 17–20.

### *i. Elements of a Retaliation Claim*

Section 1981 of Title 42 of the United States Code was enacted by Congress just after the Civil War to protect the rights of black citizens. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446–50 (2008) (discussing the statute's history and interpretation). It provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The term "make and enforce contracts" "includes the making, performance, modification,

22

and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Although the statute itself is silent on the issue, the Supreme Court has held that workplace retaliation is actionable under § 1981. *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 226 (E.D.N.Y. 2018) (citing *CBOCS W., Inc.*, 553 U.S. at 451).

"As with discrimination claims, retaliation claims alleged under § 1981 are subject to the same analysis as those alleged under Title VII." *Amaya*, 295 F. Supp. 3d at 226 (citing, *inter alia, Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). Thus, to state a *prima facie* claim for unlawful retaliation under § 1981, a plaintiff must plausibly allege (1) that she engaged in protected activity, (2) that the employer was aware of this activity, (3) that the employer took adverse action against her, and (4) that a causal connection exists between the protected activity and the adverse action.[5] *Trotter v. Nat'l Football League*, 737 F. Supp. 3d 172, 182 (S.D.N.Y. 2024) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 315–16 (2d Cir. 2015)).

### ii. Causation in the Amended Complaint

In the present case, Plaintiff has sufficiently alleged the first three elements of her *prima facie* case. First, "[t]he term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012) (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d

---

[5] Though not directly relevant at this stage of the case, if a plaintiff succeeds in demonstrating all four elements of a *prima facie* claim of retaliation, a presumption of retaliation arises and the defendant must then articulate a legitimate, non-retaliatory reason for the adverse employment action. If the defendant is able to sustain that burden, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action. *See Hicks*, 593 F.3d at 164–65 (explaining the "three-step burden-shifting analysis" for retaliation claims).

560, 566 (2d Cir. 2000)). Here, Plaintiff makes clear that the "protected activity" that she alleges is the active litigation of *Mezu I*: the SAC references "her pending section 1981 racial discrimination claim against [the University] and others in the United States Court of Appeals for the Second Circuit" (Count 1, SAC ¶ 47) and, more generally, her "litigation against Defendants alleging racial discrimination in violation of federal law" (Counts 2 and 3, SAC ¶¶ 50, 53).[6]

Second, given Defendants' active opposition in *Mezu I*, as well as in the instant action, Defendants' knowledge of Plaintiff's protected activity cannot be seriously questioned. *See, e.g., Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006) (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (finding "general corporate knowledge" of protected activity was established where the organization opposed the plaintiff's discrimination complaint in a prior proceeding)).

Third, Plaintiff has alleged significant "adverse employment action" which Defendants do not contest. The Second Circuit has consistently stated that "a plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Dickens v. Hudson Sheraton*

---

[6] In their motion to dismiss the FAC, Defendants maintain that Plaintiff failed to allege "protected activity" because they characterize Plaintiff's claim as alleging that the Second Circuit's scheduling of oral argument was the "protected activity." ECF No. 28 at 18–19. However, Plaintiff argues in opposition to Defendants' motion that "[t]he protected activity that triggered Defendants' retaliatory August 29 letter contemplating revocation of tenure and abrogation of her employment contract was continuing to seek vindication of her federal racial discrimination claims . . . ." ECF No. 36 at 6. This position is supported by the allegation in her amended complaint that the retaliation was "because of her pending section 1981 racial discrimination claim against UR and others in the United States Court of Appeals for the Second Circuit," with no limiting reference to the scheduling of oral argument. ECF No. 6 ¶ 36.

24

*Corp. LLC*, 689 F. App'x 670, 672 (2d Cir. 2017) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). A "materially adverse change" includes such actions as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities or other indices . . . ." *Dickens*, 689 F. App'x at 672 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015)). Here, Plaintiff alleges that Defendants have, among other things, referred her to the UCTP for potential tenure revocation and contract abrogation (Count 1, SAC ¶ 47), denied the renewal of her appointment to the hospital medical staff (Count 2, SAC ¶ 50), and reduced her salary (Count 3, SAC ¶ 53).

Nevertheless, Defendants argue that Plaintiff has failed to plausibly allege the fourth element: a causal connection between Plaintiff's protected activity and Defendants' adverse employment actions. After a careful review of the pleadings and applicable law, the Court disagrees with Defendants.

The causal connection between a § 1981 plaintiff's "protected activity" and the defendant's adverse employment action may be shown "(1) directly 'through evidence of retaliatory animus directed against the plaintiff by the defendant'; or (2) indirectly either (a) 'by showing that the protected activity was followed closely by discriminatory treatment,' or (b) 'through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct.'" *D'Andrea v. Nielsen*, 765 F. App'x 602, 605 (2d Cir. 2019) (quoting *Gordon*, 232 F.3d at 117).

Plaintiff does not make any allegations suggesting direct evidence of

retaliatory animus directed against her. Nor does she allege circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct. *See, e.g.*, Decl. ¶ 37 (noting that Plaintiff's referral to the UCTP for revocation of her tenure "would be the first time in the history of the university"). Rather, as the SAC indicates, Plaintiff's retaliation claims rely exclusively on the temporal proximity between her protected activity and Defendants' adverse employment actions to draw a causal connection. *See* SAC ¶¶ 47, 50, 53.

The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a [protected activity] and an allegedly retaliatory action." *Littlejohn*, 795 F.3d at 319 (citing *Gorman–Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)). However, the Circuit Court has "generally held that causation can only be inferred after the passage of a few weeks or months, . . . and . . . that a delay of more than a year is fatal to a showing of causation." *D'Andrea*, 765 F. App'x at 605–06 (2d Cir. 2019) (collecting cases decided by the Second Circuit).

Plaintiff maintains that Defendants retaliated against her by referring her to the UCTP for contemplation of revocation of tenure and abrogation of her employment contract, removing her from the University medical staff, and reducing her salary. SAC ¶¶ 46–54. She alleges that this retaliation was in response to her active litigation of her prior discrimination claim against Defendants. SAC ¶¶ 47, 50, 53. "[D]istrict courts within this circuit have held that where litigation against an

26

employer is ongoing at the time of the adverse action, the requisite temporal proximity is established." *Haughton v. Town of Cromwell*, No. 3:19-CV-00359 (MPS), 2021 WL 4248858, at *9 (D. Conn. Sept. 17, 2021); *see also Cruz v. Loc. 32BJ*, No. 22-CV-03068 (JAV)(SDA), 2026 WL 878597, at *6 (S.D.N.Y. Mar. 31, 2026) (collecting cases to support the proposition that "[a]t the pleading stage, '[w]here . . . the alleged adverse action occurred in response to ongoing litigation, there is adequate 'temporal proximity' to find causation."). Because Plaintiff's litigation against Defendants was ongoing at the time of each of these adverse employment actions, Plaintiff has plausibly alleged that these actions followed closely on her protected activity. *Singleton v. Mukasey*, No. 06CIV.6588(GEL), 2008 WL 2512474, at *6 (S.D.N.Y. June 13, 2008), *aff'd sub nom. Singleton v. Holder*, 363 F. App'x 87 (2d Cir. 2010) (dismissing the claim on other grounds).

In short, Plaintiff's amendment of her complaint to add the two additional retaliation claims under 42 U.S.C. § 1981 would not be futile, as each of her retaliation claims can survive Defendants' motion to dismiss.

### B. Defamation Claims

In addition to three counts of retaliation, Plaintiff's SAC alleges 21 claims of defamation against Defendants based on the August 29 Letter signed by Nicole S. Sampson that noted "serious concerns" with Plaintiff's conduct, including (1) Plaintiff's alleged misrepresentation of her privileges history at a prior employer when applying for credentialing, (2) Plaintiff's alleged non-compliance with University Institutional Review Board policies and practices with respect to human

27

subject research, and (3) alleged deficiencies in Plaintiff's oversight and management of her laboratory. Specifically, Plaintiff alleges separate defamation claims for each of the three alleged stated "concerns" against each of the seven Defendants: Sampson, Provost / Chief Academic Officer at the University and the signatory of the letter; Sarah Mangelsdorf, President of the University; Steve Dewhhurst, Vice President of Research for the University; Judy Baumhauer, Vice Dean for Academic Affairs at the University; Jill Halterman, Chair of the Department of Pediatrics at the University; the University of Rochester itself; and the University of Rochester Medical Center.

Although Defendants do not address Plaintiff's defamation claims in their opposition to Plaintiff's motion to amend, their motion to dismiss deals with the defamation claims extensively. Defendants present five primary reasons why they believe Plaintiff's defamation claims fail: (i) the words at issue were not reasonably susceptible of defamatory connotation; (ii) the letter was mere opinion; (iii) the letter was protected from defamation claims by the "common interest privilege"; (iv) Plaintiff failed to plausibly allege publication; and (v) Plaintiff failed to plausibly allege falsity. ECF No. 28-1 at 8–17. Because the Court agrees with Defendants' argument regarding Plaintiff's failure to plausibly allege falsity, the Court need not discuss Defendants' other arguments.

### i. Elements of Defamation

A statement is "defamatory" if it exposes an individual "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induce[s] an evil opinion of one in the minds of right-

28

thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society." *Celle* v. *Filipino Reporter Enters., Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (quoting *Kimmerle v. New York Evening Journal*, 186 N.E. 217 (1933)). Defamatory words written or in print constitute libel. *Coleman v. Grand*, 523 F. Supp. 3d 244, 254 (E.D.N.Y. 2021), *aff'd*, 158 F.4th 132 (2d Cir. 2025) (citing *Celle* 209 F.3d at 176). To recover in libel under New York law, the plaintiff must establish five elements: (1) a written defamatory factual statement concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or per se actionability. *Chau v. Lewis*, 771 F.3d 118, 126–27 (2d Cir. 2014) (also citing *Celle*, 209 F.3d at 176).

### ii. Falsity

Defendants argue that Plaintiff's allegations regarding the falsity of the statements in the August 29 Letter consist entirely of conclusory assertions. ECF No. 28-1 at 16–17. Plaintiff responds with an analogy "to underscore the absurdity of" Defendants' argument:

> During arraignment, an accused pleads not guilty to a charge of murder. According to [Defendants'] pleading theory, the accused's not guilty plea[ ] is insufficient to dispute guilt because unaccompanied by granular exculpatory proof. Off to prison!

ECF No. 36 at 6.

As an initial matter, the Court notes that Plaintiff's position in the present case is not analogous to that of a criminal defendant. In a criminal case, it is axiomatic that the prosecution bears the burden of proving the defendant guilty beyond a reasonable doubt. *See, e.g., In re Winship*, 397 U.S. 358, 362 (1970) ("[i]t is the duty

29

of the Government to establish . . . guilt [of a defendant] beyond a reasonable doubt" (internal quotation marks and citation omitted)). In the case at bar, however, Plaintiff "has the burden to allege facts supporting a reasonable inference that an allegedly defamatory statement was false." *LaNasa v. Stiene*, 731 F. Supp. 3d 403, 419 (E.D.N.Y. 2024), *aff'd*, No. 24-1325, 2025 WL 893456 (2d Cir. Mar. 24, 2025) (collecting cases).

Indeed, the "pleading theory" that Defendants advance is not unique to this case, but rather is rooted in Second Circuit caselaw. As Defendants correctly note, "[f]alsity is an element of defamation under contemporary New York law." *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 244 (2d Cir. 2017). Consequently, "a plaintiff in New York courts generally must identify how the defendant's statement was false to survive a motion to dismiss." *Id.* at 245.

In other words, "[t]o survive a motion to dismiss, plaintiffs must do more than 'perfunctorily state that a statement is false.'" *Goldman v. Reddington*, 417 F. Supp. 3d 163, 171 (E.D.N.Y. 2019) (quoting *Cabello-Rondón v. Dow Jones & Co., Inc.*, No. 16-cv-3346 (KBF), 2017 WL 3531551, at *6 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 720 F. App'x 87 (2d Cir. 2018)). "For example, in *Goldman*, the court held that plaintiff had sufficiently pled the falsity of a rape allegation by asserting that a report by the district attorney's office found 'no credible proof of any sexual conduct.'" *SparBar Ltd. v. Lam*, No. 23-CV-184 (CBA) (VMS), 2024 WL 5696616, at *2 (E.D.N.Y. Jan. 26, 2024) (citing *Goldman*, 417 F. Supp. 3d at 168). "On the other hand, courts dismiss

30

defamation claims where Plaintiffs assert in a vague, general manner that the contested statements are false, without articulating with specificity how those statements are false." *Id.* (citation omitted).

Here, Plaintiff fails to articulate with specificity how the statements from the August 29 Letter are false. Although Plaintiff repeatedly asserts that the statements constitute "defamatory falsehoods" or that they are "knowing false statements," Plaintiff does not include any allegations in the SAC explaining how they are false. For instance, Count 5 of the proposed SAC alleges that Sampson published a "knowing false statement accusing her of noncompliance with the University Institutional Review Board policies and practices . . . with respect to human subject research . . . . [including] retaliatory conduct against a medical student who attempted to comply with University RSRB policies." SAC ¶ 59. However, Plaintiff fails to allege that she was, in fact, in compliance with the Review Board's policies and practices, or that she did not retaliate against a medical student seeking to comply with these policies. The same is true of Plaintiff's allegations regarding the other two challenged statements. Further, none of the five exhibits to her complaint – including her declaration – provide any insight into how the statements in the August 29 Letter are false. Without greater specificity, Plaintiff has not plausibly pled facts that give rise to the inference of a valid claim. *Cabello-Rondon*, 2017 WL 3531551, at *6. Accordingly, the Court finds that amendment of any of Plaintiff's defamation claims would be futile.

31

## C. Conclusion

In sum, the Court grants Plaintiff's motion to amend in part, and denies it in part. Plaintiff may proceed with the original retaliation claim under 42 U.S.C. § 1981, as well as the two additional retaliation claims alleged in the SAC. However, because the defamation claims as pled in the SAC could not survive a Rule 12(b)(6) motion to dismiss, the 21 defamation claims may not proceed. Because this Court is allowing Plaintiff to amend her complaint, Defendants' motion to dismiss (ECF No. 28) is denied as moot and without prejudice to refiling upon service of the amended complaint. *See Wilson*, 2021 WL 2942354 at *6.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Plaintiff's motion for a preliminary injunction [ECF No. 10] is DENIED; and it is further

ORDERED that Plaintiff's petition for a writ of mandamus [ECF No. 34] is DENIED; and it is further

ORDERED that Plaintiff's motion for sanctions [ECF No. 44] is DENIED; and it is further

ORDERED that Plaintiff's motions to submit additional evidence [ECF Nos. 55, 62, 63, 68, 69] are DENIED; and it is further

ORDERED that Plaintiff's motion to amend [ECF No. 41] is GRANTED IN PART and DENIED IN PART; and it is further

ORDERED that Defendants' motion to dismiss Plaintiff's complaint [ECF No.

28] is DENIED AS MOOT and without prejudice to refiling upon service of the amended complaint, and it is further

ORDERED that Plaintiff must file and serve her Second Amended Complaint – including her original retaliation claim under 42 U.S.C. § 1981 and the two proposed new retaliation claims under § 1981, but without her defamation claims – on or before **June 22, 2026**; and it is further

ORDERED that Defendants shall answer or otherwise respond to Plaintiff's Second Amended Complaint on or before **July 17, 2026**.

SO ORDERED.

Dated:     June \_\_1\_\_, 2026
          Rochester, New York

ENTER:

HON. MEREDITH A. VACCA
United States District Judge

33